**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| GLOBAL STATE INVESTMENT USA, INC.; PINNACLE RIDGE CAPITAL LP; PR GP SPE, LLC; and GS/PR GP, LLC, ) ) ) ) | No. 2:14-cv-4494-DCN |
| Plaintiffs, ) | |
| vs. ) | |
| ) | **ORDER** |
| LAS PROPERTIES, LLC, individually and on behalf of PINNACLE RIDGE, LTD., ) ) | |
| Defendants. ) ) | |

This matter is before the court on a motion to dismiss filed by plaintiffs Global State Investments USA, Inc. ("Global State"); Pinnacle Ridge Capital, LP ("Capital"); PR GP SPE, LLC; and GS/PR GP, LLC. Plaintiffs seek to dismiss the counterclaims asserted by defendants LAS Properties, LLC ("LAS") and Pinnacle Ridge, Ltd. ("PRLtd"). For the reasons stated below, plaintiffs' motion to dismiss is granted in part and denied in part.

## **I.  BACKGROUND[1]**

The litigation arises out of an apartment complex located in Dallas, Texas and involves two limited partnerships as well as the various entities and individuals owning interests in those partnerships. Countercl. ¶ 68. The first of these limited partnerships, PRLtd, was formed in 2005 for the purpose of owning an interest in the Pinnacle Ridge Apartments Complex ("the complex"). Id. ¶¶ 67, 68. Anthony J. Skattell, III ("Skattell")

---

[1] The facts are drawn from the complaint, defendants' answer and counterclaim and the parties' briefs. For the purposes of this motion to dismiss, the court assumes the facts alleged in the counterclaim are true, construes the facts in defendants' favor and draws all inferences in defendants' favor.

1

loaned PRLtd $1.5 million to purchase the property on which the complex now sits. Id. ¶ 67. In September 2006, when PRLtd was repaid $1,498,000 for the land's purchase price, members of PRLtd offered Skattell an interest in PRLtd in lieu of repaying the entire loan. Id. Skattell accepted the offer to take one half of the money owed to him and convert the other half into a capital contribution for the purpose of becoming a limited partner of PRLtd. Id. Skattel transferred his 30% interest in PRLtd to his company, LAS. Id. ¶¶ 67, 68.

HHS Partners, LLC ("HHS") owned a 69% interest as a limited partner in PRLtd. Id. ¶ 68. The general partner of PRLtd, Pinnacle Ridge GP, LLC ("the GP"), owned a 1% interest. Id. The GP was owned and operated by its members David Hendricks ("Hendricks"), Fred Morgan ("Morgan"), and James Charnquist ("Charnquist"). Id. ¶ 70. HHS was owned by Hendricks, Housing 2000, Inc. (a corporation owned by Morgan), and Sage Properties Corp. (a corporation owned by Charnquist). Id. ¶ 71.

LAS alleges that it believed PRLtd owned the complex when it became a limited partner and did not learn otherwise until it received documents through subpoena in 2013. Id. ¶¶ 69, 120. The complex was actually owned by Pinnacle Ridge Apartments, LP ("PRApts"), a limited partnership governed by Texas law and formed in 2006 to construct, operate, and own the complex. Id. ¶ 69. Under the PRApts Limited Partnership Agreement, PRApts was owned by the GP (1%) as the General Partner; PRLtd as the sole Class A Limited Partner (49%); and Capital as the sole Class B Limited Partner (50%).[2] Id.

---

[2] Since LAS owned 30% of PRLtd, under the PRApts Limited Partnership Agreement, LAS owned 14.7% of PRApts.

The PRApts Limited Partnership Agreement required that an "asset manager" essentially supervise the GP in its actions on behalf of PRApts. Id. Ex. 2 at 52 § 9.4. As the asset manager, Global State was to be provided with monthly reports regarding the budget and development progress of the complex, and any major changes to the original budget or development plan had to be approved by the asset manager before the GP could carry out the new plans. Id. LAS alleges that Global State became the asset manager of PRApts in December 2008 and that Capital "was merely a tool used by Global State to perpetrate its business needs." Id. ¶¶ 98, 99.

In 2010, Capital discovered that the GP "fraudulently transferred $1.8 million from PRApts." Id. ¶ 92. Capital and Global State then brought an action against the GP alleging misappropriation of funds (PRLtd was not a party to this suit despite being a victim of this fraud). Id. Before much litigation proceeded, the parties agreed to settle their disputes and entered into a settlement agreement. Id. ¶ 93.

As part of the settlement agreement and apparently without notice to LAS, the GP and PRLtd each agreed to assign to Global State (or its designee) all of their outstanding interest in PRApts. Id. ¶¶ 94, 95. On November 5, 2010, the GP assigned its 1% interest in PRApts to GS/PR GP, LLC and PRLtd assigned its 49% interest in PRApts to Global State. Id. LAS maintains that it was never told about the GP's misappropriation of funds and the resulting settlement agreement. Id. ¶ 100. LAS alleges that it did not discover the transfer of PRLtd's assets through the settlement agreement and the sale of the complex[3] until 2013, when it received documents through subpoena leading to this information. Id. ¶ 120. Because PRLtd previously "had no ability to bring suit . . .

---

[3] According to LAS, in February 2012, PR SPE LLC purchased PRApts and the complex from Global State. Countercl. ¶ 96. It appears that PR SPE LLC is a plaintiff in this case, PR GP SPE LLC.

because [the misappropriation and transfer of PRLtd's assets] were hidden from the only innocent limited partner," LAS asserts that "there was no party to bring this [action] on behalf of PRLtd until now." Id. ¶ 121.

LAS originally filed suit in Texas State District Court against the GP for claims related to LAS's request for access to PRLtd's records and accounting. Id. at ¶ 83. The state court stayed the case and referred all claims to arbitration. Defs.' Resp. to Pls.' Mot. Prelim. Inj. Ex. 2. LAS later added plaintiffs to the arbitration. Id. at 5.

On November 21, 2014, plaintiffs filed a civil action in this court against defendants asserting four claims, seeking: (1) a declaratory judgment that they are not subject to an arbitration agreement with LAS, and thus there is no basis for defendants to proceed in arbitration against them; (2) a declaratory judgment that any claims that defendants may seek to assert against them have been fully released; (3) an injunction permanently enjoining defendants from proceeding in the arbitration against the plaintiffs; and (4) indemnification by LAS (standing in the shoes of PRLtd) for breach of warranty based on PRLtd's representation that there were no interested parties such as LAS. On January 9, 2015, this court denied plaintiffs' motion for a preliminary injunction to enjoin defendants from proceeding against them in arbitration.

On February 6, 2015, LAS, on behalf of PRLtd, filed an answer and counterclaim, asserting claims against plaintiffs for: (1) fraudulent transfer, related to plaintiffs' receipt of PRLtd's interest in PRApts; (2) breach of fiduciary duty related to Global State's failure to protect PRLtd's interest in PRApts; (3) negligence related to Global State's work as the asset manager for PRApts; and (4) breach of contract related to Global State's role as the asset manager of PRApts. On March 2, 2015, plaintiffs moved to

4

dismiss defendants' counterclaims. Defendants filed a response on March 19, 2015, to which plaintiffs replied on March 30, 2105. The parties have fully briefed the motion and it is ripe for the court's review.

## II.  STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

5

### III.  DISCUSSION

Plaintiffs seek to dismiss defendants' counterclaims on five grounds.  First, plaintiffs argue that defendants lack standing to bring a claim for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA").  Pls.' Mot. 7.  Second, plaintiffs contend that defendants lack standing to bring claims for negligence, breach of fiduciary duty, and breach of contract, because such claims belong to PRApts, and defendants cannot bring claims on behalf of PRApts.  Id.  Third, plaintiffs assert that defendants fail to allege sufficient facts to state a claim for breach of fiduciary duty under Texas law.  Id. at 12–18.  Fourth, plaintiffs argue that defendants' negligence claim is barred by the economic loss rule.  Id. at 18–19.  Lastly, plaintiffs argue that defendants' claim for breach of contracts fails as a matter of law because it is not sufficiently pleaded under Rule 8.  Id. at 19–20.

The court will address each argument in turn.

#### A.     Standing under TUFTA

Plaintiffs first argue that defendants are not creditors within the meaning of TUFTA, and they therefore cannot assert a claim under the Act.  Pls.' Mot. 7.  Plaintiffs further argue that TUFTA "was not intended to reach [the] type of transaction" alleged by defendants.  Id.

"TUFTA 'aims to prevent debtors from fraudulently placing assets beyond the reach of creditors.'"  In re Galaz, 765 F.3d 426, 433 (5th Cir. 2014) (quoting GE Capital Commercial Inc. v. Worthington Nat'l Bank, 754 F.3d 297, 302 (5th Cir. 2014)).  In order to prevail on a TUFTA claim, a plaintiff must prove that (1) she is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before,

the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. Id. (citing Nwokedi v. Unlimited Restoration Specialists, Inc., 428 S.W.3d 191, 204–05 (Tex. App. 2014)).

TUFTA defines a creditor as someone who has a "claim"—that is, a "right to payment or property, whether or not the right is reduced to judgment, liquidated, . . . fixed, contingent, matured . . . disputed, undisputed, legal, equitable, [or] secured." Id. (quoting Tex. Bus. & Com. Code Ann. § 24.002(3), (4)). A plaintiff's status as a creditor thus "turns on whether 'she had a right to payment or property that existed at the time of the fraudulent transfer[ ] or that arose within a reasonable time afterwards.'" Id. (quoting Williams v. Performance Diesel, Inc., 2002 WL 596414 at *2 (Tex. App. Apr. 18, 2002)). A "debtor" is defined as "a person who is liable on a claim." Id. (quoting Tex. Bus. & Com. Code Ann. § 24.002(6)).

Defendants' fraudulent transfer counterclaim arises from the 2010 settlement agreement in which PRLtd assigned its 49% interest in PRApts to Global State. Countercl. ¶ 94. Defendants allege that "[t]he GP fraudulently transferred real property and personal property from PRLtd to [plaintiffs], for their benefit, in violation of Tex. Bus. & Comm. Code Ann. § 24.001 et seq." Id. ¶ 123. In other words, defendants claim that PRLtd has a right to its membership interest in PRApts as it existed prior to the 2010 settlement agreement. Such membership interest is viewed as personal property under Texas law. Tex. Bus. Orgs. Code Ann. § 101.106(a) ("A membership interest in a limited liability company is personal property."). Because defendants claim that PRLtd has a right to personal property, its membership interest in PRApts, as it existed at the

7

time of the settlement agreement, PRLtd is a creditor under a plain reading of TUFTA.[4] In re Galaz, 765 F.3d at 433 (finding that a plaintiff's status as a creditor "turns on whether 'she had a right to payment or property that existed at the time of the fraudulent transfer[].'" (quoting Williams, 2002 WL 596414 at *2)).

Recent Texas case law supports this interpretation of PRLtd's creditor status under TUFTA. In Galaz, the plaintiff, an economic interest holder in the limited liability company filed a TUFTA claim contesting the transfer of the company's assets to a third party. Id. at 428–29, 432–33. The Fifth Circuit analyzed plaintiff's rights as an economic interest holder in the company under the applicable California corporate law, finding that "'[a]n economic interest in a limited liability company constitute[s] personal property of the . . . assignee.'" Id. at 433 (quoting Cal. Corp. Code Ann. § 17001(n)). The court found that plaintiff "had a right to payment and was entitled to distributions from [the company] before" its assets were transferred, and therefore had standing to bring a TUFTA claim as a creditor. Id.

Plaintiffs argue that, regardless of whether PRLtd is a creditor, PRLtd's role as an active participant in the transaction it now contests precludes its ability to recover under TUFTA. Pls.' Mot. 9. According to plaintiffs, "PRLtd itself transferred the interest in [PRApts]; the GP merely signed the document on PRLtd's behalf." Id. at 7. Now, plaintiffs assert, PRLtd wants the court to order Global State to give the transferred property back—a situation not intended under TUFTA. Id. Plaintiffs analogize PRLtd to a fraudulent grantor attempting to regain property that it fraudulently conveyed, and assert that such an action is prohibited under Texas law. Id. at 9–11.

---

[4] Under this reasoning, LAS, asserting the fraudulent transfer claim on PRLtd's behalf, countercl. ¶ 125, would also be a creditor under TUFTA.

Plaintiff first cite Meletio Elec. Supply Co. v. Martin, 437 S.W.2d 927 (Tex. Civ. App. 1969), a case that predates TUFTA. Id. at 9. In Martin, a judgment creditor and an executor of an estate attempted to set aside a deed that the decedent of the estate had fraudulently conveyed before his death to evade creditors. 437 S.W.2d at 927. The Texas Court of Appeals found that the executor could not set aside the deed "because he administers the estate as it existed at the death of the deceased, [and] the deceased would have been bound by the deed." Id. at 928. The court further found that a judgment creditor could not maintain an action to revest title in a fraudulent grantor, and therefore the judgment creditor also could not set aside the deed. Id.

Plaintiffs also cite Matteson v. El Paso Cnty., 2001 WL 898729, at *5 (Tex. App. Aug. 10, 2001), for the proposition that "[t]he courts of this state [Texas] will not encourage fraudulent transactions by allowing a grantor to regain property through his estate, which he fraudulently conveyed during his lifetime." Matteson similarly involves an executor's unsuccessful attempt to set aside deeds that the decedent of the estate fraudulently conveyed. 2001 WL 898729, at *5.

Both Martin and Matteson are inapposite to the present action. PRLtd is not a person who individually made the decision to fraudulently transfer property, or a representative of someone who made a fraudulent transfer. Rather, PRLtd is a limited partnership, consisting of a general partner and two limited partners. Countercl. ¶ 68. According to defendants, the decision to transfer PRLtd's interest in PRApts was made by the GP alone, without LAS's knowledge. Id. ¶ 123. This allegation is supported by the "full, exclusive and complete" authorization given to the GP in PRLtd's Amended and Restated Limited Partnership Agreement. Id. Ex. A at 7 ¶ 4.1. Now LAS, as a

9

limited partner, has brought a TUFTA claim on PRLtd's behalf to regain the property that the GP allegedly fraudulently transferred. Such a claim is quite different from the factual scenarios presented in Martin and Matteson.[5]

Because a plain reading of TUFTA supports finding that PRLtd is a creditor and there is no evidence that defendants' fraudulent transfer claim runs counter to the intent of the Act, the court finds that defendants have standing to assert a TUFTA claim.

### B.    Standing for Other Claims

Plaintiffs next argue that defendants lack standing to bring claims for negligence, breach of fiduciary duty, and breach of contract, because such claims belong to PRApts, and defendants cannot bring claims on behalf of PRApts. Pls.' Mot. 7. Defendants respond that PRApts has already received compensation for the harm caused by the GP, and that they are asserting counterclaims against plaintiffs "because [plaintiffs] conspired to defraud PRLtd." Defs.' Resp. 8.

Plaintiffs rely on 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 221 (5th Cir. 1994), for the proposition that a limited partner must sue on behalf of the limited partnership "to vindicate a wrong done to the limited partnership." Pls.' Mot. 11. They assert that PRApts was the limited partnership that was injured by the actions alleged in defendants' counterclaims. Id. at 11–12. Defendants respond that "LAS brings a derivative action against [plaintiffs] on behalf of PRLtd, not PRApts." Defs.' Resp. 8.

---

[5] Plaintiffs also cite Hawaii case law, TSA Int'l Ltd. v. Shimizu Corp., 990 P.2d 713, 732–733 (Haw. 1999) and In re Kanamu-Kalehuanani Kekauoha-Alisa, No. 05-01215, 2007 WL 1752266, at *10 (Bankr. D. Haw. June 15, 2007), for the proposition that PRLtd is not a creditor. Pls.' Mot. 11. Plaintiffs assert that these cases are persuasive because they apply the Uniform Fraudulent Transfer Act. Pls.' Reply 4. However, these cases are inapposite to this action and, regardless, Galaz provides compelling precedent for this court to follow.

The court finds that defendants have sufficient standing to allege the remaining claims on behalf of PRLtd. Defendants allege that PRLtd was harmed by plaintiffs' actions resulting in claims for breach of fiduciary duty, breach of contract and negligence. Countercl. ¶¶ 126–130. Accordingly, LAS has brought a derivative action on behalf of PRLtd, not PRApts.

### C.     Breach of Fiduciary Duty

Plaintiffs next argue that defendants' breach of fiduciary duty claim should be dismissed for failure to plead sufficient facts that Capital and Global State owed PRLtd a fiduciary duty. Pls.' Mot. 16.

The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. Graham Mortg. Corp. v. Hall, 307 S.W.3d 472, 479 (Tex. App. 2010) (citing OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P., 234 S.W.3d 726, 743 (Tex. App. 2007)). "In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust." McBeth v. Carpenter, 565 F.3d 171, 177 (5th Cir. 2009) (citation and internal quotations omitted). However, "a person's status as a limited partner without control over the partnership does not give rise to fiduciary duties." CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione, 888 F. Supp. 2d 780, 794 (E.D. La. 2012) (discussing Texas law). Indeed, limited partners owe a fiduciary duty only in "certain equitable circumstances, such as when the limited partner is exercising control

11

over the limited partnership or is also acting in the role of general partner." Strebel v. Wimberly, 371 S.W.3d 267, 279 (Tex. App. 2012).

In alleging a breach of fiduciary duty and the resulting injury, defendants state that "[h]ad Global [State] properly performed the services for which it was paid, it would have seen that the GP was stealing money and could have prevented the theft. Its failure to do its duty constitutes a breach of fiduciary duty." Countercl. ¶ 126. Here, it appears defendants are referring to the GP's theft of about $1.8 million dollars from PRApts. Id. ¶ 87.

Defendants further allege that once Global State and Capital discovered the theft, they did not contact "the limited partners in PRLtd, so as to inform them of the issues facing the partnership." Id. ¶ 127. "Instead, they seized the opportunity to leverage PRLtd's interest in PRApts by demanding the 49% interest as partial payment to them under their settlement agreement with the GP and other parties." Id. ¶ 128. In doing so, defendants assert, Global State and Capital "put their interests above PRLtd's interests resulting in a breach of their fiduciary duty to PRLtd." Thus, PRLtd was directly injured by this alleged breach.

### 1. Global State

Defendants allege that, by virtue of Global State's role as asset manager, it became a de facto general partner of PRApts, and therefore owed PRLtd a fiduciary duty. Countercl. ¶ 97–98. In support, defendants allege that "[t]he GP could not do anything that would materially affect PRApts without the consent and prior approval of the Asset Manager." Id.

Plaintiffs maintain that defendants fail to allege facts that would support finding such a direct relationship between Global State and PRLtd. Pls.' Mot. 14. They cite Bell v. VPSI, Inc., 205 S.W.3d 706, 719–20 (Tex. App. 2006), arguing that defendants "must plead facts that would lead to the conclusion of control." Id. at 18. Bell involved a motion for summary judgment on the issue of vicarious liability. 205 S.W.3d at 710. In analyzing this issue, the Bell court found that "[w]hether the employer retained the right of control by contractual assumption is a question of law, whereas retention by actual exercise of control is generally a question of fact for the jury." Id. at 720 (citations omitted). Bell does not address what facts must be asserted to survive a motion to dismiss on a claim for breach of fiduciary duty, and is inapposite to this action.

While plaintiffs acknowledge that a more direct relationship existed between Global State and PRApts, they assert that the PRApts Limited Partnership Agreement "gave the duties of financial reporting not to the asset manager but [] to PRLtd [a]s the class A limited partner." Pls.' Mot. 14. Therefore, plaintiffs argue, "if anyone is to blame [for failing to prevent the theft from PRApts], it is PRLtd, not Global [State]." Id. at 15.

However, it is not clear that PRLtd was required to prepare and deliver the financial reports to the asset manager under the PRApts Agreement. The PRApts Agreement provides that "[t]he General Partner and/or Class A Limited Partner [PRLtd] shall cause [certain] financial reports to be prepared and delivered to the Asset Manager."[6] Countercl. Ex. 2 at 53 ¶ 9.5 (emphasis added). Further, the PRApts Agreement assigns to the asset manager an active role in PRApts' financial affairs. It

---

[6] The PRApts Agreement is attached to defendants' counterclaim and can therefore be considered in this motion to dismiss. Tellabs, 551 U.S. at 322.

13

provides that if any of the required financial reports are not completed within a certain time frame,

> the Asset Manager shall have the right, after ten (10) days notice to the General Partner and the General Partner's failure to cure the deficiency with ten (10) days following it receipt of such notice, to prepare, or to hire an independent agent or auditor to prepare the plan, report, or tax information that has not been delivered. . . . In addition, the Asset Manager will have the right and power to remove and replace, without the approval of the General Partner or Class A Limited Partner, any person who is a not a party to this Agreement . . . who is engaged to perform any of the foregoing functions and fails for two consecutive months or three out of any five months to deliver the plan, report, or tax information to the Asset Manager on a timely basis.

Id. Ex. 2 at 54 ¶ 9.5.

These provisions undermine plaintiffs' assertion that PRLtd is to blame for failing to prevent the theft from PRApts. They also shed light on the amount of control Global State, as the asset manager, exercised over PRApts, thereby supporting defendants' allegation that Global State acted as a de facto general partner. Accordingly, the court finds that defendants have adequately alleged at the motion to dismiss stage that Global State was a "de facto general partner" of PRLtd.

### 2. Capital

Defendants allege that Capital and Global State were "one and the same," and that Capital is therefore also liable for a breach of fiduciary as a de facto general partner. Defs.' Resp. 9. Specifically, defendants allege that

> [a]lthough Capital was a limited partner of PRApts, it was merely a tool used by Global to perpetrate its business needs. There never was any clear separation between Global and Capital. They had the same employees, the same place of business, used only one email address and the employees communicated on behalf of Capital using Global representatives. The only distinction between Capital and Global is a filing with the State of Texas that organized Capital. Other than that filing, there is no indication that Capital was a separate entity.

Countercl. ¶ 99.  Accordingly, defendants submit that Capital was the alter ego of Global State.  Defs.' Resp. 9.

"The alter ego doctrine applies 'when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'"  Dodd v. Savino, 426 S.W.3d 275, 290 (Tex. App. 2014) (quoting Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986)).  The doctrine "is used to pierce the corporate veil so the injured party might recover from an officer or shareholder who is otherwise protected by the corporate structure."  Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n, 77 S.W.3d 487, 499–500 (Tex. App. 2002).  "Alter ego is inapplicable with regard to a partnership because there is no veil that needs piercing, even when dealing with a limited partnership, because the general partner is always liable for the debts and obligations of the partnership to third parties."  Id.

Plaintiffs argue that the alter ego doctrine is inapplicable here and cannot be used to find that Capital owed PRLtd a fiduciary duty as a de facto limited partner.  Pls.' Reply 8.  The court notes that this case is still in its infancy. At the summary judgment stage, if plaintiffs so move, the court will entertain arguments regarding the applicability of the alter ego doctrine based on specific facts developed through discovery relating to the relationship between Capital and Global State.  However, at this stage and under this standard of review, dismissal of the breach of fiduciary duty claim against Capital is not appropriate.

### D.     Negligence

Plaintiffs next argue that defendants' negligence claim is barred by the economic loss rule and should therefore be dismissed.  Pls.' Mot. 18–19.

The economic loss rule "limit[s] the recovery of purely economic damages in an action for negligence."  LAN/STV v. Martin K. Eby Const. Co., 435 S.W.3d 234, 238 (Tex. 2014).  While there is no bright line rule under Texas law as to when this rule applies, "the Restatement [(Third) of Torts: Liability for Economic Harm] . . . concludes generally that 'there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties.'"  Id. at 241–243 (quoting Restatement (Third) of Torts § 3).

Plaintiffs argue that because defendants allege that only economic injury resulted from Global State's negligence, this claim is barred by the economic loss rule.  Pls.' Mot. 18–19.  Defendants, citing Martin, respond that under Texas law, the economic loss rule prevents a plaintiff from recovering "for his economic loss resulting from bodily harm to another or from physical damage to a property in which he has no proprietary interest."  435 S.W.3d at 235; Defs.' Resp. 9–10.  They contend that such circumstances are not present here "because PRLtd had property interests in PRApts that were damaged or stolen" due to Global State's alleged negligence.  Id. at 10.  Martin, however, expands the applicability of the economic loss rule beyond the parameters quoted by defendants.  Id. at 238–41 (discussing the development of the economic loss rule beyond its original application).

Defendants allege that Global State was negligent in carrying out its duties as asset manager, duties that arose from the PRApts Agreement.  Countercl. ¶ 129.  As a

16

result of this alleged negligence, PRLtd suffered economic loss in the form of its interest in PRApts. Because defendants' economic loss resulted from Global State's alleged negligence in the performance of a contract, the court finds that the negligence claim is barred by the economic loss rule. Martin, 435 S.W.3d at 243.

### E.     Breach of Contract

Finally, plaintiffs argue that defendants' breach of contract claim should be dismissed because Global State was not a party to the contract that defendants assert it breached. Pls.' Reply 11. Plaintiffs further contend that dismissal is warranted because this claim has not been properly pleaded under Rule 8. Pls.' Mot. 19.

The elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. Walker v. Presidium, Inc., 296 S.W.3d 687, 693 (Tex. App. 2009) (citations omitted). In Sharpe v. Household Fin. Corp. II, No. 8:09-cv-02784, 2010 WL 3893846, at *2 (D.S.C. Sept. 30, 2010), the court found that the plaintiffs' failure to point to a provision of the settlement agreement that was actually breached by the defendant precluded the court from drawing "a reasonable inference that [defendant] is liable for a breach of contract." Similarly, in Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc., No. 3:14-cv-00050, 2014 WL 4402800, at *2 (D.S.C. Sept. 3, 2014) the court dismissed a breach of contract claim in part because the plaintiff failed "to set forth sufficient facts regarding how the contract was breached."

Here, the facts supporting defendants' breach of contract claim are scattered throughout the counterclaim. Defendants allege that Global State was the asset manager

of PRApts, a position designated in the PRApts Agreement, a contract. Countercl. ¶ 97. Although Global State is not the named asset manager in the Agreement, defendants allege that Global State replaced the original asset manager in 2008. Id. ¶ 98. Thus, defendants have identified the contract that Global State was allegedly a party to and later breached. Although defendants identify provisions within the PRApts Agreement that state Global State's duties as asset manager, id. ¶¶ 97–98, they do not allege which specific provisions Global State breached and how they breached them. The intertwining responsibilities of the GP and the asset manager, as outlined in the PRApts Agreement, make this delineation important. See Countercl. Ex. 2 at 53–54 ¶ 9.5.

In light of Sharpe and Advanced Pain Therapies, the court dismisses defendants' breach of contract claim for failure to specify which provisions of the contract were breached and how they were breached.

## IV.  CONCLUSION

Based on the foregoing, plaintiff's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** without prejudice.  The claims for negligence and breach of contract are dismissed without prejudice, while the claims for fraudulent transfer and breach of fiduciary may proceed.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 29, 2015
Charleston, South Carolina**